We're proceeding now in the case of Brian Davison v. Phyllis Randall. Mr. Gant, are you ready to begin? I am, Your Honor. Good morning. I know it may not seem like morning after the en banc argument, but it still is the morning. So good morning, and may it please the Court. Scott Gant for Appellant Phyllis Randall. Your Honors, there are several novel issues in this case, perhaps accurately described as issues of first impression. But there are also several well-established areas of law which suggest that the district court erred and the judgment entered by the district court entering a declaratory judgment should be reversed. The two areas of well-established law where the district court erred relate first to the issuance of a declaratory judgment. In particular, there's a lack of standing under Article III. And the second area of well-established law where the district court is well at odds with established case law is with respect to the finding of State action, which, of course, is an essential element of Section 1983 claim. I'd like to begin, Your Honors, with the issue of the issuance of a declaratory judgment, because however sexy and interesting the First Amendment issues in this case may be, I respectfully suggest you do not even need to reach them, and you should not reach them, because you are required to determine whether or not there was standing in this case. And we submit that there was not. There never was from the inception of the case, and there certainly wasn't standing at the time that the Court issued a declaratory judgment. Of course, this question of whether or not there was standing and the Court had the power to issue a declaratory judgment is a question of law that this Court reviews de novo. And it's, moreover, uncontroverted that a plaintiff must have standing for each and every claim for relief. So there's no question here that the issue of standing had to be analyzed with respect to the declaratory judgment request specifically. It's also undisputed that the plaintiff has the burden of proof with respect to the standing issue and has so throughout the duration of the case. So both at the time that the plaintiff filed his complaint and at the time of trial and the issuance of the order, the Court had to be sure that it had standing and that standing existed, and it did not. So why was there no standing in this case? It's important to look at the facts in the timeline here. Mr. Davison filed his original complaint in seven and a half months before the action at issue in this case. The sole issue that was the subject of the declaratory judgment was this no more than 12-hour ban by Ms. Randall of Mr. Davison's screen name, SGP Virginia, from her Facebook page, which occurred beginning on the night of February 3, 2016 and ending on the morning of the 14th when Ms. Randall woke up. It's undisputed that there were no new posts made by Ms. Randall to her Facebook page during this time. Mr. Davison filed the complaint, the amended complaint, asserting the claim at issue and appeal here, seven and a half months after the 12-hour ban had ended. Ms. Randall lifted the ban on her own, seven and a half months before there was any litigation, after having decided and thought it over after a good night's sleep that she didn't want to ban this person who she subsequently learned was Mr. Davison from her Facebook page. Did she think over and decide and tell the Court at some point that she would no longer seek to ban people based on what they said on her Facebook page? She never made a categorical representation. So she's maintaining that she still has the right to do this. She would not have done it in this particular instance, but going forward she has the right to continue to do this. That is her position. Why isn't there a risk that this will happen again? There may be some theoretical risk, but I don't think it's a – How is it theoretical? Well, in the sense that it could happen. Well, but usually we say if it's happened before and the person who did it says they continue to have the right to do it again, that's enough to raise a reasonable risk of reporting in the future. With respect, Judge Harris, I don't think those two things are enough. I think the case law doesn't suggest that. And he says he's going to keep posting. Right, and he has continued to. In fact, in the record here, he has continued to make posts to her Facebook page. For example, if you look at Joint Appendix page 439, that is an example of posts subsequent to the ban. The pages I just cited were comments by Mr. Davison, critical of Ms. Randall, accusing members of the local government of engaging in criminal acts. But when it comes to the First Amendment, I just don't think that sort of the sovereign's beneficence, I have the right to do this, but I will forego it in some cases, is enough to deprive a court of standing. If the state – I don't want to say state actor in the technical term, but if the state actor in the colloquial term is maintaining the right to do this going forward, and it's obviously important to her to maintain that right because otherwise this case really would go away, and the person against whom enforcement has been undertaken once before continues to do the same kind of thing, I feel that that would really pretty drastically narrow our jurisdiction if we said we couldn't review the case under the circumstance. I don't think that it would narrow your jurisdiction. In fact, I don't think they could point to any case that looks like this where you have – and I think the duration of the ban is a material fact here. So you have a short ban that ended in 12 hours. Then Ms. Davison, on her own, without any complaint from anybody, no one from the local government, no one from her staff, independently, she woke up and decided I don't want to do this anymore. Can you just tell – this is just a question of fact, and you may not be able to answer this question, which I understand, but why is it important to her to maintain that, even though she thinks perhaps she should not have done it in this case, she wants to reserve the right to do it going forward? Because I think that is inextricably intertwined with the question of whether this is state action, and I know you tried to push that aside for purpose of your question, which I appreciated, to try and untangle them. But to answer your question, I don't think we can disentangle them because her position is I'm doing this, even though I'm a public servant, I'm a government employee, I have First Amendment rights as a citizen that are independent of that. And her position was and remains that she is undertaking this in her individual capacity. So, of course, if she's not a state actor, then she has the right to do that. So that is the reason why she has maintained that. And it's possible that if she had been asked, well, if you have to assume, or I've decided as a court that you are a state actor and we're going to treat you that way, will you agree to abstain? She may have, but that was never presented. But I think to answer the line of questions you're asking, Judge Harris, it's also critically important to remember what I mentioned, which is that the plaintiff has the burden of proof on standing. I mean, this is an unusual case. We have a 12-hour ban that actually ended up in a trial before the district court, went all through discovery, had a bench trial, and that was what led to the judgment at issue. And the plaintiff had the burden of proof. And Mr. Davison, who was up, was representing himself pro se at the time, but has ably discharged his responsibilities as an advocate, so much so that he won below. Well, you brought up that the defendant, essentially the district court, had not addressed the standing. I'm not sure you even brought it up, district court. But be that as it may, we do have a case, a Kennedy case, in which we've got a two-pronged situation. It seems to me, in answer to Judge Harris' first question, it does appear, at least in that second, that I think Mrs. Randall testified that she thinks she can completely ban people from this page if they want to. And then on the first one, it seems like Davison wants to continue to post on it. Why is Kennedy? Kennedy seems to be on all fours, if those facts are accurate. I don't think Kennedy is. I want to address both parts of your question, both specifically about Kennedy, but also that Mr. Davison did not establish at trial that there was any likelihood that Ms. Davison would do this again. So, for sure, I cannot represent to you that she disclaimed that she would do this. But the burden was on Mr. Davison to show that his activities were chilled. They were not. Just look at the joint appendix 439 that I showed you where he criticized her roundly. We know that, right? He says that he was chilled and that he would have said even more if he weren't so worried that she was going to take him off the page. Well, I don't think he, I didn't read, if you're referring to something in the appellate briefs, I didn't read it that way. But more importantly, if you look at what's actually in the trial record, the transcripts and the order from the court, that's at issue. I don't think he actually showed that there was any dissuasion of him engaging in his inactivities. Now, back to your question, Judge Winn, about Kennedy specifically. Kennedy, of course, concerned criminal statutes, not, you know, again, we have to sort of separate out the state action question. But there was a criminal statute that was on the books that the law enforcement authorities have an obligation to enforce, unless they're exercising prosecutorial discretion, not to do so. There was an, and that was, Kennedy was at the motion to dismiss stage, so it was taking the allegations in the complaint as true. And the complaint in that case alleged that not only was there a criminal statute on the books, but that it was regularly enforced. So here we don't have, again, leaving aside the state action question, obviously our position is that she was undertaking this in her individual capacity. The county has taken the position that she was as well. They had no ability to control what she did. But going to regular enforcement, which was one of the factors in Kennedy, there's no allegation here, nor could there be. This was the one and only time Ms. Randall ever banned anybody for any duration from her Facebook page. And this goes to, you know, are there indicia that suggest that there is an actual controversy? Did Randall ever dispute standing before the trial court? I do not believe that it was raised, but as I think you were alluding to. He disputed below, and so now we're addressing it here, which is not saying you can't, but I'm just saying you didn't bring it up. I wish it had. The trial court found that Davison continued to avail himself to this page? I don't remember a specific finding about that, but what is clear from the district court's order. The trial court did find such a thing? I'm reading this language. This continues to avail himself Facebook page? Yeah, we don't dispute that. In fact, we think that that supports our position. If that is true, then answer the question. If the trial court found that, does that matter insofar as Kennedy? And even though you say it doesn't apply, the law is nonetheless, whether it's criminal or whether or not it's here, it's nonetheless the same in terms of sending it. Well, I think that fact supports us, as I was suggesting in response to Judge Harris' question. If he continued to avail himself of the page after the ban went into effect, that negates or undercuts at least any suggestion that he was killed. But what about Randall's statement throughout the whole trial? She kept testifying that she would be happy to ban other commentators from this plate, and she has no problem attacking if someone attacks another person from banning them. I don't recall her ever testifying that she planned to, wanted to, or intended to ban anybody, Mr. Davison or anyone else from her Facebook page at any point in time. But the district court made absolutely no findings, not even one. That's because it wasn't raised, and I do understand. I find this posture difficult because, on the one hand, you are absolutely right, that even if it wasn't raised below, it goes to our jurisdiction. We have to address it. On the other hand, because it wasn't raised below, of course the particular findings that go to standing weren't made, and Davison never had a chance, was never put on notice, that he had to make whatever particular kind of showing beyond that you think he had to make, beyond, I'd like to keep doing it, and she doesn't say she'll stop blocking me. So tell me how we're supposed to deal with that gap. My red light is on. May I answer the question? Go ahead. Thank you. I wish it had been raised below, and I don't like to do this when I'm a counsel hired on an appeal and disagree with the decision that was made by trial counsel. But I want to be responsive to your question. It should have been raised below. I wish it had been raised below. It would have made your job and the job of the district court easier if it had been. But notwithstanding that. If she had done so, she could have done something that the record does not reflect. That is, there's nothing to indicate that she has disavowed in a future enforcement. Well, I don't think that she needs to do that. But it was. It needs to be so. You say the record doesn't have anything in it, but there are several pages in the record. You've got page, look at page 277. Look at page 245 and 274 where she testifies that this is solely for information sharing. It's not an official county page. She would be happy to ban other commentators on it. That's what we have, particularly when you didn't raise it. That's what we have on the record here. We don't have anything saying, so that seems the point to a finding or at least the indication. She's going to continue to do this, and there's nothing on the record that says she's not. I don't take back anything I said about wishing this had been done below. But it is unquestionable that the district court had an independent obligation to satisfy itself that there was standing here. And notwithstanding that. And the plaintiff had the burden of proof on that issue. And notwithstanding those two things, there was nothing presented at trial and nothing in the order at issue where the district court found, let alone supported, the notion that there was a likelihood of future injury here. There just simply wasn't. There was a 12-hour ban that was lifted by Ms. Davis and Ms. Randall on her own. And then for the months afterwards, seven and a half months until a complaint was even filed that challenged it. In the seven-and-a-half-month period, Mr. Davis went on and continued to comment freely. Then the additional ---- Excuse me, Mr. Gann. I want to make sure you realize you're eating up your rebuttal time. I apologize. No, no, that's okay. It's your decision whether you want to continue. Thank you. Unless anyone would like me to continue that, I'll just reserve the balance of my time for rebuttal. Thank you, Your Honor. Okay, sir. Thank you very much. Mr. Rogers. Good morning, Your Honors. Leo Rogers. I'm county attorney for Loudoun County. I'm in the unusual position of arguing as a cross-appellee before the appellant gets to argue. My clients are Loudoun County and Chair Phyllis Randall in her official capacity. The trial court found the case against the county to be meritless. There was no government action. What was found was that Facebook on its own had a program to delete comments like those made by Mr. Davidson and his pseudonym Virginia SGP. Facebook changed that policy. That case was dismissed. The trial court also dismissed the case against Chair Randall in her official capacity. There was no evidence that she acted in her official capacity. In fact, the trial court made specific findings she was acting as an individual, as a person, that she made a concerted effort to keep her Facebook page separate and hers, not part of the government. For the first time here, we hear from counsel that there's a policy of deliberate indifference. Of course, there's no evidence in the trial record of that. There's no evidence that a government policy applied to Ms. Randall's personal page. The counsel is arguing that the county and Ms. Randall's vigorous defense somehow implies deliberate indifference. Your Honor, the county is a defendant below and a cross appellee here. So is Chair Randall in her official capacity. The trial court dismissed the claims at the trial court level. We are cross appellees here today defending that decision. You're just defending the county. You're not defending Ms. Randall. I am defending Ms. Randall in her official capacity. Which is effectively a suit against the county, right? That is correct. Yes. That is correct, sir. With regard to procedural due process, the trial court identified there's little or no evidence on procedural due process. Judge Kircheris did find that the individual Facebook page could be a public forum. He identified that this was a novel, new test, novel question. And instead of applying traditional methods of First Amendment analysis of a public forum, he used for the first time a state actor test. The state actor looked back in time, had the judge's normative judgment based on a totality of circumstances, that at that snapshot in time it was a public forum. Never before has such a test been used. The First Amendment means more than that. We should know when our First Amendment rights exist and when they're protected. No one, not Mr. Davison, not the county, certainly not Ms. Randall as an individual, could possibly have foreseen the creation of this novel test and how it would be applied. I don't understand. I'm sorry. I don't. So is this a qualified immunity argument? I don't. The judge found that she was not acting in her official capacity. The allegation on appeal is that she was. I'm sorry. This is still about the official capacity suit. Yes, that is correct. And whether you can sue the county effectively for what happened there. Yes, that is correct. Okay. And you're saying the county could have had no way of knowing she would do this? Absolutely not. Okay. I'm sorry. I just didn't understand. And why would a county not be defending Ms. Randall in her individual capacity? The county can defend Ms. Randall in her individual capacity, but the charge was found against her in her individual capacity that she somehow created a government public forum. For the purposes of this argument, I am only defending the cross-appeal. I am not prosecuting the initial appeal. So you're not defending her. As a person. For purposes of appeal. That is correct. You are not saying. That is being done by Ms. Randall. You are not here to say there was no First Amendment violation here. That is not what you are saying. Your Honor, I am saying that the Judge Kacharis applied the wrong test. He did not apply the traditional First Amendment test. He applied a new test, that novel test that has never been applied before. So you are saying there was no First Amendment violation here. That is correct. Because I have to argue in the alternative, if you found that she acted in her official capacity or somehow the county was responsible. From the time of our founding fathers, our elected officials have given speeches on their front porch. They have raised funds. They have held rallies. They hold political conventions. Never has any of that communication been deemed to be a public forum. Well, that's because they don't usually, like at a political convention, I've been to a couple of political conventions, they don't usually say everyone come on in and talk about whatever you want to talk about. That's what we're here for. And while we're here, let's do some government business and figure out who gets plowed out when it snows. That's not usually the agenda. The point is that they are considered under the same traditional First Amendment test of is that a government property and a public property right. The public has this right to the public square for people to speak. That's not the case with a political convention. They get to communicate with their constituents. Social media is just another way of communicating. Why isn't social media just another form of a town hall meeting where the invitation is everybody come, talk about whatever you want, and I won't bore you while I read it, but you remember the breadth of the invitation she gave to the public here. And while we are at this town hall meeting, after you've all said your piece, we're going to conduct government business. Your Honor, you are correct, and I don't want to take Mr. Gant's time, but I think that's an extraordinarily important question because the answer is it can be, and the county social media page is a limited public forum, and it is just that. It's the town hall. It is whether or not individual citizens, elected officials who have their own First Amendment rights to say what they want to put on their page. She's got two other pages that no one is saying, right, her personal page, her campaign page. I don't think there's any question but that she has free speech rights and may use them freely on those two pages, but on the page where she's conducting government business and swathing it in the trappings of her official capacity and inviting the public to come and talk about whatever they want to talk about, you could imagine the rule might be different there. Respectfully, I disagree. She did not create the public forum. She never intended to create a public forum. What she wanted to do was communicate with her constituents. She could have done so at her front porch. She could have done so on a stump speech. She could have done so at a convention. She used a form of social media. It's not that simple, unfortunately, but the cost of the counseling is this is only from my perspective. Standing is an interesting issue, but it's not the issue that I think makes this case a very important case. What makes this case important is what you pointed out. There's been no court, Supreme Court, nor circuit court that has addressed whether a government official Facebook page constitutes a public forum. We've got two other cases that are out there. You've got the district court case down in Kentucky, and you've got the Southern District of New York that dealt with President Trump's Twitter page, and they went different ways on it. That, in my opinion, and my colleagues may differ, but I'm just telling you that's the issue in this case. You gave it three minutes, and that's it, and now we're going to get back up and talk about standing, and we might want to talk about standing and an issue you didn't even bring up below, and now you want to come in and argue standing when you've got, to me, wow, a blockbuster case right in front of you that ought to get some serious attention to this issue because this thing reverberates. We'll be the first circuit to address this three minutes you've given to this most important issue, and it's not so simple as saying she didn't intend to do it, she didn't do it. There are a lot of factors in this case that differentiates this case and gives us opportunity to look into the nuances that are addressed by the two district court cases. That's my point on it, but my colleagues may feel differently, but I just think that's the issue in this case. Your Honor, my red light's still on, but I sure want to get to that point. You probably stood up because you gave yourself three minutes. With regard to that issue, in those cases, there were elected officials with very different circumstances. You disagree with me. This is a very important issue. It is extraordinarily important. Give it three minutes. Why did you give it three minutes? I don't understand. Why am I talking about standing when, and I mean, if we're going to do standing, we could do it on a brief. But why do you give this three minutes? I don't normally ask that question, but I'm curious because I don't see how you missed the boat this much. Your Honor, we are separating the case from her in her official capacity versus her in her personal capacity. I cannot answer that question. All right. Go ahead. But I will say this. We will answer that question, in my opinion, in this case, if we get beyond the standing. Maybe that's the whole thing. If we don't get standing, we don't get to it. But we get to it. We've got to answer a blockbuster issue with three minutes and a little argument here and a little kind of glib look that it doesn't apply and going back and forth. Well, I thank you for the additional time. We'll do the hard work on it, but it would be helpful to have the good dialogue. Sure. Because I was expecting you to tell me about the Kentucky case and tell me about this New York case and go back and forth and talk about Facebook and Twitter. I mean, this is exciting stuff, man. And I'm chomping at the bit to do so because in both of those cases. Your time has expired. You know, you elect to – and this applies to both counsel. You know, there's a limited amount of time, unfortunately, and you have elected to make your presentation in the way that you have. Unless the judges would like to waive, you know, if you'd like to waive the time constraints, we can. But otherwise, I've got to hold you. But in the interest of fairness to the other side, everybody gets the same amount of time. Thank you, Your Honor. Okay. Thank you. Thank you. All right. Ms. Fallow? Ms. Fallow, you'll be addressing your cross-appeal as well? Yes, Your Honor. Okay. Good morning, and may it please the Court. I'm Catherine Fallow on behalf of the Appalachian cross-appellant, Brian Davison, who is here in the courtroom today. And, Your Honors, I think it's important to put this case in the larger context, as Judge Winn just alluded to. As the Supreme Court recognized last year in the Packingham v. North Carolina case, public officials are increasingly using social media like Facebook and Twitter as an important, if not the primary way, to speak to and hear from their constituents. In this case, the district court correctly followed the Supreme Court's directive in Packingham to apply longstanding First Amendment principles in order to ensure that citizens' rights to participate in these new kinds of public forums are protected. Now, Randall attacks the district court's decision and argues that the First Amendment doesn't apply, the public forum doctrine doesn't apply, the requirement of viewpoint neutrality doesn't apply, but Randall's arguments are wrong for three basic reasons. First, the record shows that Randall used her chair, Phyllis J. Randall, Facebook page overwhelmingly for official, not personal purposes, and therefore state action exists and the First Amendment applies. Second, the record demonstrates that she used this Facebook page as a public forum, that she opened it in the comment space to members of the general public to speak on any matter without limitation. So you're saying that irrespective of any intent, general intent on her part, that once she leaves a space for people to respond, then that automatically creates the forum? Yeah, I think under the public forum doctrine, the courts look at the intent of the government official looking at their policies and practices. Right, but can the government official wear two hats? In other words, can the person be an official and then also be an individual speaking for herself? Is she necessarily a member of the Board of Supervisors anytime she goes on Facebook? No, she is not acting in her official capacity anytime she goes on Facebook. Right, but then when she calls herself chair, Phyllis Randall, is she automatically speaking as a government official? I don't think that in itself is dispositive. That is a factor to consider. I think it's important to note here that Randall has three Facebook pages. She has a purely personal Facebook profile. She also maintains a page called Friends of Phyllis Randall, which she considers to be her campaign or her political page. But this is the chair, Phyllis. And you are conceding that those two are not state action? Yes. But as the district court found, if you look at the pages from her chair, Phyllis J. Randall, page in the record, there are a number of factors that demonstrate that overwhelmingly she is using this for public purposes. Not only does she list herself as a government official, call herself chair Phyllis Randall, she gives her government contact information on this page. She uses government resources in the form of her chief of staff, who is a paid county employee who is allowed to administer the page and does, in fact, post the page. I thought the record established that the employee did this in her own time, that Ms. Randall and the employee both did this apart from their compensated time being paid by Loudoun County. I don't think that that is clear from the record. I think there is times when Ms. Arnett, her chief of staff, did testify that she did sometimes post things after hours, but she also testified that she did it during the next morning after Ms. Randall asked her to post something. It's also promoted, right, from what is undoubtedly her official newsletter. She promotes it with a link to this chair page, right? In her official newsletter, she provides a link to her chair Randall Facebook page. Also, at one point, and this is at JA455, she says, if there's any question about whether she considers her chair Phyllis Randall page official, she says, everyone, could you do me a favor? I really want to hear from any Loudoun citizen on any issues, request, criticism, compliment, or just your thoughts. And then she says, however, I really try to keep back-and-forth conversations on my county Facebook page, chair Phyllis J. Randall, or county email. And then she says, having back-and-forth constituent conversations are foyable, which completely supports the view that she herself saw this as her official page, subject to government regulations. There are two cases, as your opposing counsel pointed out, you brought the Pakenham case, which is a good case in terms of Justice Kennedy's views on this. But the two cases that are out there, neither of which is binding on us, of course, these are district court cases and other circuits. But in Kentucky, the court was faced with a media page type case, but it didn't analyze it under the form analysis. It just said this is government speech. So that's not in your favor. Then you've got the Southern District of New York that looked at the President's and essentially the court concluded that the Twitter account and the interactive space could constitute a public forum because the President, therefore, could govern the exercise and control of the aspects of the page. So here, are you contending that the entire page is a forum, or are you contending that only the comments page is the public forum? Our contention is the comments section. And the basis for doing so, are you relying upon the rationale of this New York case, or what is it? Why do you say just the comments page? Well, I think the Supreme Court has made clear that when you're looking and determining the Cornelius case, that when you're determining what the relevant forum is, you look at the access sought by the speaker. Here, Mr. Davison is seeking access to the comments section. And similarly, in the Knight First Amendment case in the Southern District of New York, the plaintiffs were seeking access to what the judge in that case called the interactive spaces, which is slightly different because it involves Twitter, but it's the ability to reply directly to the President. Well, it's just like a normal town hall, right? Like if the Board of Education is having a town hall meeting, the public forum is the part in the audience. Nobody thinks that part of the public forum is you get to sit up with people on the Board of Education. You want access to the part that has been open to the public. Correct, and that is the analogy that we think is most apt here, that when you have a Facebook page in this instance, Ms. Randall's own posts to her Facebook page are clearly government speech and nothing in Mr. Davison's claim is seeking to change her own speech. He just simply is seeking not to be excluded from the public forum that is the comments section. And if you look in the record, there are a number of examples of comments with back and forth, both between Ms. Randall and different constituents or between Ms. Randall and Mr. Davison. Give us what you maintain to be the evidence that shows access to this interactive space was widely available and not constrained by notions of inherent selectivity that the Supreme Court talked about in the Pleasant Grove case. Yes, anyone with a Facebook profile can post a comment on the Chair Randall Facebook page. Ms. Randall herself has not made any attempt to limit the kind of speech or the kind of speakers that can post a comment on that page. And I know, Your Honor, you referred to the district court's decision in Kentucky. As you can probably guess, we disagree with that decision and respectfully think that the judge got it wrong there, particularly on the issue of government speech, that the Supreme Court has made it clear in the Summum case, but also later on and most recently in the Mittal v. Tam case, that to have government speech, you need to show that the government controls the private speech in this particular space and that in the eyes of the public you would consider that comment by a member of the public to be government speech. But if you look at the comments in this Facebook page, no one would think those are Randall's own thoughts. And she better hope not, right, because I don't understand why any government official would want to say that's government speech because then the government's on the hook for everything that's in there. If one person puts a religious reference in there, it suddenly becomes an Establishment Clause violation if it's government speech. It seems like to label that government speech would open up a whole separate can of constitutional worms. I think there are a lot of problems with that, but I also think it is just implausible to suggest, especially here in contrast to the Kentucky case where Ms. Randall has not made any attempts to limit the kinds of speech, the topics, the format of the comments in the comment section. If she did make the limits, significant limits, of course with the Supreme Court Pleasant Grove type limit, you then say it wouldn't be a public forum if the proper limits were made? I think that if she, for instance, you have to make comments available. If you set up a Facebook page. I'm just thinking in a general proposition. In other words, she could limit this such a way that it wouldn't be a public forum. If she deleted every, yes. If she deleted. Would Facebook do it? Well, I mean, if the Facebook closed her account, I suppose. I want to know, can Facebook put limits on the way in which you use web pages that would make it not a public forum? You know that question is out there. Well, I think. This case is a major case. Yes. And it is, I don't know what kind of cases you get in your lifetime, but in my opinion, this could be the case that you might talk about for years. Could be. I mean, or maybe Stanton gets rid of it. I don't know. Well, as counsel, we are also counsel in the case involving President Trump and his Twitter account. So we also agree that it is a very important case. And I think that the issue here is, first of all, in this case, the claim rests on Randall's control of Mr. Davidson's access to the Facebook limit. Can Facebook put specific limits in terms of how you use this page and, therefore, take it out in public form? I think if Facebook shut off all comment functions and it was just Chair Randall's own speech, that would not be a public forum. That would be more akin to this Court's decision in the page case where it was a county website. If it did that, it wouldn't be Facebook, would it? That's true. David, Facebook will take it upon itself to limit hate speech. Isn't that correct? Yes, I believe so. That is part of their terms of service. Okay. So how does that affect your forum analysis? Well, I think, first of all, in this case, none of the claims in this case involve Facebook's own terms of service or community standards. Here, Mr. Davidson is not challenging anything that Facebook did. He is challenging Ms. Randall's decision to ban him from commenting on her page. But there's something, I guess, and I don't know if I'm actually adding or I hope I'm adding to Judge Keenan's question, not taking you in a different direction. There is something sort of different, right, about the idea that there could be a government-established public forum in which a different private actor has the right to limit speech. That seems like an unusual confluence, right? I agree. I mean, I think the issue there is, first of all, to the extent that Randall is arguing that public forum doctrine categorically does not apply to privately-owned property. No, I'm not saying that. I'm just saying – I'm sorry, and I'm sure you'll want to address that, too. But my particular concern is the idea that you could have a public forum in which the government can't restrict speech based on viewpoint, but some private party has that right. Is there anything comparable to that you can think of, or is this just – and the answer may be no, and this is the world we live in because we have new technology. I think partly it is novel because social media is new, and it's a different kind of way of communicating. But I do think it's important to recognize that the principles that the Supreme Court has held in the public forum doctrine are still applicable here. It has held that the public forum doctrine applies to government-owned or controlled property. As I've mentioned here, the – Okay, this isn't government-controlled property. Well, our argument is that this is. Well, but Loudoun County has a specific social medium policy, doesn't it, in the JA-49? And you have to meet certain criteria to become an official Loudoun County website. And then they have certain conditions and restrictions. So how does that play into your analysis? We agree that the Chair Randall Facebook page did not – that Loudoun County itself said it did not fall under this Loudoun County social media policy. But as the district court found, when you look at the way in which she used her Facebook page, that it is fairly attributable to the state under this court's analysis in Rossignol, where they said – as opposed to a governor or a president of the United States or a sheriff, somebody who's executing – or someone who has executive authority with complete authority to act and doesn't have to act as a five-person entity? Does that make a difference? I don't think it matters in this instance. The instance is whether she set this up as a public forum related to her official status as the Chair. And her – part of her duties are making – As the Chair, what does the Chair mean? Does the record show that the Chair is anything more than a member of the board? She has ceremonial duties to represent the Loudoun County Board of Supervisors at certain events and at certain meetings. And that is what she does via this Facebook page. Right, but she doesn't have any independent authority as a result of being elected Chair, does she? Or I didn't see that in the record. Is that in the record? I don't believe in terms of enacting policy, no. Okay. I think it's important to note that to the extent that you raise this question of can you apply a public forum doctrine to Facebook if Facebook also has the control, to look at it from the flip side. If you hold that you can never have a public forum on Facebook, that would mean that even the Loudoun County social media accounts which the Loudoun County attorney has conceded are public forums would not be considered public forums. And there would be no First Amendment limits on how public officials or public entities use their social media accounts. And that result would be directly opposite to what the Supreme Court emphasized in Packingham, which is that social media is taking the place of the traditional public square. And as public officials increasingly use this as the place to host public discourse, it would be completely at odds with the First Amendment to allow them to silence all critics and engage in rampant viewpoint discrimination, and that would be, you know, public discourse would be much poorer for it. Can I ask you a question about sort of the limits of your position? You've already sort of narrowed it to this is just about the chair page. It's clear to you that a public official has the right to have a personal page and a campaign page, but it's distinct to this chair page. Is it your position that even if, assuming that this is state action and this is a public forum, are there still some content-based restrictions that Randall could put on this page? Could she say, I understand the district court found and you agree that she did not, in fact, have a policy of I just don't allow attacks on people's families, but could she have such a policy if this was a public forum? I think if you had viewpoint-neutral policies that were reasonable and consistent with the purpose of the forum, that would be permissible. Even if they're content-based? As long as they're, well, it would partly depend on whether you consider this a designated public forum and you'd have to get into that analysis, but if she had a number of policies saying, I only want to discuss Loudoun County policies or topics, and I also don't want spam. If you had a limited public forum, you could limit it to particular topics. I guess what I'm asking is, cards on the table, there's a lot of old case laws saying, oh, sure, you can, in a physical public forum, you can put limits on things like incivility or personal attacks, but in the old days, we used to say those aren't content-based because they're not being enacted with a motive to suppress. We can't do that anymore after Gilbert versus, you know, Reed versus Gilbert. So after that, those all count as content-based. So I'm asking you, if we call this a public forum, are public officials going to have the right to impose content-based restrictions on things like personal attacks? It kind of depends on how you define personal attacks. I do believe, I think that is a tricky distinction between content-based and viewpoint-based. I think, I believe that still under the public forum doctrine, if the government draws a line that is reasonable in light of the purposes of the forum, and so if you were to only have much more limited speech and say, I only want to talk about these topics, and you didn't have something. So you might be able to call it a subject matter. Yes. Okay. Yes, and I think it would depend on the context of the particular forum. And it would be the same rule that we're applying to physical town halls anyway, right? Yes, and I think that's the best way to look at it. Does it matter whether she's an elected official in terms of her ability to create a forum? Let's just say Philip Randall was the Assistant Zoning Administrator, not elected by anybody, just made her way up from, you know, being a good, loyal county employee. Would she have had the ability to create the public forum, not being elected to any office? I think she could as long as she has powers as part of her official status. But she wouldn't have power as an assistant to the Zoning Administrator. Sorry, I just mean that she has duties that she carries out as a government employee. Okay, she would have duties, yes. And if she then created a Facebook page that was overwhelmingly related to her duties as the assistant, whoever, and she opened it as a public forum for speech related to that official status, that that could be considered a public forum. Does it matter at all whether the person, I mean, here the district court found that on this page, Ms. Randall or Chair Randall is, in fact, carrying out government business, that she's connecting constituents with, I think it was like an externship opportunity that she's figuring out, managing snow removal from the page. So does it matter whether the official sort of has the capacity to do that? I mean, it might matter that it has to be someone who is able to conduct government business on her own and then do it on a Facebook page. Yeah, I mean, I think that would be one factor you would take into account. And you would have to look at the particular Facebook page. But if you were using your Facebook page as a way, if you were a government employee and part of your job was to hear from constituents or hear from members of the public and provide services or back and forth, and you did that via a social media account, then I think in that circumstance, if you looked at, you know, the whole context, it would be fair to hold that you would not be allowed to ban people from that Facebook because you don't like their viewpoint. Okay. Ms. Fellow, I think we've given you the same amount of overage, or roughly speaking. One more small question I want to ask, and that is with regard to the Rosenwald case of this circuit, in which this Court looked at the defendant's actions and determined that from the private perspective his actions, when you looked at it linked to the actions he was taking, that that can be a basis for filing that he or she acted under colored law. Is that also applicable here that would lead us to the conclusion that Ms. Brando here acted under colored law when she created this Facebook page and when she banned Davidson from the page? This is the Rosenwald case? Yes. Yes, absolutely. We think that that case is very instructive here because it says purportedly private actions by a government employee can be considered state action if they're sufficiently linked to the person's official status. And we say here not only is there somewhat of a link, it's overwhelmingly linked, if you look at her page, to her role as chair of Loudoun County Board of Supervisors. Okay. Thank you. Thank you. Mr. Gant. Thank you, Your Honors. Picking up on Rosenwald, that and the Goldstein case are Mr. Davidson's main cases, neither of which support their position here. In Rosenwald, this court clearly stated that the scheme at issue in this case was enabled by the law enforcement status of the defendants in that case. So there was a direct connection between the scheme that was at issue and the status of those government officials. What's your point, that that was an exercise of executive authority? That their role as government officials was directly related to the challenged conduct. Okay. What about being a sheriff involves monitoring newspaper stamps? Well, what the court said in that case was that the fact that these were law enforcement officials, they were either known to the people who worked in the places where they were buying the newspapers or they had shirts and other indicia that they were law enforcement, that they used that fact, including there was testimony that the clerks were intimidated. They felt like they had to give all the newspapers up because these were law enforcement officials. So there was a direct connection here. What Ms. Randall did was something that people do every day in their private capacity. Well, everybody can ban someone from their Facebook page, but only a government official can kick someone out of a public forum where government business is being done. Right. It's a very different injury that can be inflicted because of her official status. But for that analysis to work, Your Honor, I think you already have to accept that it's a public forum. Not just in the colloquial sense. Only a government official can say, you are no longer welcome where constituents of this county gather to exchange views and receive information about government services. You can't do that. No other person could do that. Well, clearly in a tautological sense, no one else other than Ms. Randall could have stopped people from commenting on her own page. I'm saying it is her official status that allowed her to exclude people from a place where government business is getting done. Some people have the opportunity to come onto this space, I don't want to call it a forum, a space, to be connected by government officials to opportunities or government services, but some people don't. It's hard for me to imagine how being able to do that is not facilitated by your official position. I think this points to an important distinction between this and the Trump case. Going to a question I imagine many of you haven't, Judge Wynn, asked about directly. So there are a couple of important distinctions between the cases. First of all, there's a critical distinction between Ms. Randall. There's no power to make decisions on behalf of the county as an independent person, and I think Mr. Rogers' research is this, Judge Keenan, you asked some questions that got to this issue. The President of the United States has all of the power vested in him by Article II of the Constitution. He's able to give directions that are enforceable as a matter of law and make policy for the executive branch through his Twitter account. And Ms. Randall can't do any of that. There's no dispute that she was talking about government business. She couldn't give a direction, make an order, make a decision that had the force of law on this page. She just couldn't do that as a matter of law. There is no case that I've been able to find or that Mr. Davison has cited where a public employee in their individual capacity was found to have independently created a public forum. It's like when an individual congressman, congressperson, has a town hall. He or she is not acting as congress. He's only been of 435 people. But, I mean, we can all agree, right, that when a congressperson opens a full town hall, that's a public forum. So tell me how that works. Well, I'm actually not sure that that's true, Your Honor. Do you think individual congress, like when I go see my congressperson at a town hall, he can kick me out of it? Well, I guess it depends on what the town hall is. There's a distinction that's been alluded to in the argument before between someone running for office, even if they're already in office. So if it's a town hall that is for – No, no, this is like I'm here to hear what my constituents think about paving the roads. You're out, though, because you don't like me. Okay. Or you're out because you're a Democrat. So if it's clear that the town hall is the person in their capacity as an official as opposed to trying to get reelected. Well, but only as one member of a 435 body who has actually no power to do anything on his own. And I'm using his only because of this. Right. I think that that would be subject to a First Amendment analysis. Okay. Well, how come? Why is that different? Because I think there are a number of factors here that both bear on the public forum analysis. And on the public forum analysis, our argument is that that is a misfit. We're not saying that you couldn't, I think, for other reasons, there was no First Amendment violation here. But our point is that that doctrine is a misfit for this situation, in part because of what Judge Keenan was asking about earlier, which is you have shared control over content. You can't point to any other case where this Court, the Supreme Court, or to my knowledge any other court, has said that both the private actors and government actors both simultaneously control the content of the forum and yet that is deemed a public forum. So you need to do some other analysis. And then for other reasons we've discussed, because there was a de minimis infringement of whatever right is at issue here and because we don't believe that this is state action, and the Rossingall case doesn't help, nor does the Goldstein case. In that case, the Court said that there were three things that they looked to. They looked to the government's own view. Here, if you apply that, Loudoun County says this was not state action. They looked at whether there were funds provided. This was the case, Goldstein was the case of the volunteer fire department. So what was the government's view? They said they were government. Did they get funds? Yes. Were they regulated? Yes. None of those are present here. You can't find any case that resembles this one where a court found that conduct like this constituted state action. I see my light is on. All right, sir. Thank you very much. Thank you very much, Your Honor. Ms. Fowler, excuse me. Thank you, Your Honors. Just very briefly addressing something that Mr. Gantt Oh, wait a minute. Maybe I made a mistake here in the lineup. Did I make a mistake? Okay. Okay. Thank you. I've got all these instructions here. Thanks. Something that Mr. Gantt said that we were discussing earlier, that even if Ms. Randall does not have sole policymaking authority to bind the Loudoun County Board of Supervisors on her own, she is a member of the board, and she has the duty to represent the county at official functions and ceremonial events. This is from JA 330. And she shall have all the rights, privileges, and duties as every other member. And she, in fact, used her Facebook page to, for instance, solicit comments from the public, which she was then going to use at Board of Supervisor meetings the next day, and to announce her official appearances at event functions and ceremonial events. Does it make any difference that when you read her website, these are just fluff pieces? I mean, you know, happy Mother's Day. Good job snowplowing, guys. I mean, it's just kind of a rah-rah type website. I mean, it seems to me the only thing that can make the difference is her invitation to other people to participate. I'm just wondering whether you're overstating your case by saying that, you know, she's using information to conduct business. I don't think that's in the record. These are just kind of happy talk entries on her part, with no disrespect to her. You know, this is part of public relations. Yeah. But it seems to me that the rub has to be the comments section, that the case rises and falls. I mean, how does the – when you just have the happy talk on her part, how does that add to your public forum argument? Well, I certainly think on the public forum argument, the fact that she invites people to comment on the page, on her chair Facebook page, and the fact that she said, if you're going to have back-and-forth conversations with me, those might be foyable, so please do it on the chair Randall Facebook page. That is strong evidence, both that she considered it an official page and she considered it a public forum. So, really, your case rises and falls on that? I think, yes, primarily on the state action question, which I think is somewhat distinct, although there's a lot of overlap. The fact that maybe some of these posts are sort of fluffy has to do with some of her duties as the chair, which is to preside at ceremonies. But there is also evidence in the record that she makes statements on behalf of the Board of Supervisors, that she makes announcements related to budget and policy decisions, and the information about snow removal was made on the two days after sort of a historic storm at the time, when a lot of the government, I think, offices were closed. So it's actually kind of an important part of her duty as a county-level official. But all of that together, I think, shows that she's using this as an official page, even if the official duties are somewhat sometimes ceremonial. But, yes, the fact that she invites people to comment on it, that's what makes it a public forum.  Thank you, Your Honors. Thank you very much. We'll ask the clerk to adjourn court, and we'll come down to greet counsel afterward. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Barbara Milano Keenan, James A. Wynn Jr., Pamela A. Harris